UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTHONY FOX,

                                Plaintiff,


                        v.                                    **Hon. Hugh B. Scott**

                                                              06CV148

                                                              (CONSENT)

THOMAS POOLE, et al.,                                         **Order**

                                Defendants.


        Before the Court is plaintiff's motion for discovery sanctions and to exercise

supplemental jurisdiction (Docket No. 52[1]).  Plaintiff, an inmate proceeding pro se, seeks

sanctions against defendants for their failure to respond completely to his Interrogatories and

Requests for Admissions and also moves to have this Court exercise supplemental jurisdiction

over his pending New York State Court of Claims proceeding (id.).  Responses to this motion

were due by August 3, 2007, and any reply was due by August 13, 2007 (Docket No. 54).  On

plaintiff's motion (Docket No. 61), the due date for his reply was extended to August 17, 2007,

and the motion was deemed submitted (without oral argument) as of that date (Docket No. 62).

        On August 25, 2006, the parties consented to proceed before the undersigned as

Magistrate Judge (Docket No. 17).

---

[1]In support of this motion, plaintiff submitted his affirmation with exhibits, Docket
No. 53, and his response to defendants' opposition, Docket No. 63.  In opposition, defendants
submitted (under seal, see Docket No. 55), their attorney's declaration, with exhibits, Docket
No. 59.

**BACKGROUND**

On March 13, 2006, plaintiff sued the superintendent of his former facility, Five Points

Correctional Facility ("Five Points"), the director of Health Services for the New York State

Department of Correctional Services ("DOCS"), the Five Points health services director, treating

personnel at Five Points, the DOCS grievance director, and the State of New York for allegedly

violating his constitutional rights by placing plaintiff in medical isolation for tuberculosis in

September and October 2005 (Docket No. 1, Compl.). While in that isolation, plaintiff alleges

being deprived of medical and dental care (id. at 6). He also claims that defendants violated the

Americans with Disabilities Act (id. at 6-7) and discriminated against him despite being

allegedly a federally funded facility, in violation of § 504 of the Rehabilitation Act, 29 U.S.C.

§ 794(a) (id. at 10). This Court granted plaintiff's motion (Docket No. 2) to proceed in forma

pauperis without dismissing any claims or parties (Docket No. 3).

In May, June, and October 2006, defendants separately answered (Docket Nos. 5-7, 11-

13, 20). Apparently, while various defendants were answering, plaintiff made his Interrogatories

and other discovery requests (see Docket No. 27, dated June 6, 2006, filed Jan. 24, 2007). In

plaintiff's first motion to dismiss affirmative defenses on June 12, 2006, he also cross-moved to

compel discovery (Docket No. 8, at 2), which this Court then rejected as being premature

(Docket No. 18, Order at 3).

On August 31, 2006, the Court issued the first Scheduling Order (Docket No. 19) which

called for initial Rule 26(a) disclosures by October 30, 2006, motions to compel discovery by

January 29, 2007, and discovery to be completed by February 28, 2007. Defendants then filed

their Rule 26 initial disclosure (Docket Nos. 21, 57 (Docket No. 21 under seal)), see W.D.N.Y.

Loc. Civ. R. 7.1(a)(1) (all discovery in pro se cases are to be filed with the Court).

Plaintiff filed his June 2006 Interrogatories on January 24, 2007 (Docket No. 27), which

included Requests for Admissions and Requests for Documents.  On that same day, plaintiff

moved to compel answers to these Interrogatories, production of documents, and responses to his

Requests for Admissions (Docket No. 28), which this Court granted in part in compelling

answers to his Interrogatories and responding to his Requests for Admissions, denied in part as to

his document demands (Docket No. 33, Order of Mar. 15, 2007, at 6).  Defendants were given

thirty days to respond to plaintiff's discovery demands (Docket No. 33, Order at 6).  That Order

also amended the Scheduling Order (cf. Docket No. 19), with discovery to have been completed

by June 9, 2007, and dispositive motions were due by August 10, 2007 (Docket No. 33, Order at

6; see also Docket No. 32).  Defendants then filed responses to plaintiff's discovery demands

(Docket Nos. 35-37, 50-51, 58 (Docket No. 51 under seal)), and individually answered plaintiff's

Interrogatories (Docket Nos. 38-43, 45-49).

*Motion for Sanctions*

In the present motion, plaintiff complains that defendants have not fully complied with

this Order to compel (Docket No. 53, Pl. Affirm. at 1).  He seeks full answers to his first and

second sets of Interrogatories and his first and second sets of Request for Admissions (id. at 2),

and contends that defendants twice violated his right to confidentiality under New York State

Public Health Law § 2782 by releasing twenty-one pages of documents on April 6 and June 18,

2007[2], without his authorization (id.).  He seeks the sanction of claim preclusion and striking defendants' defenses due to their failure to completely respond (id. at 10).

In particular, plaintiff contends that defendants refuse to answer Interrogatories (Docket No. 27) about their actions prior to placing plaintiff in respiratory isolation or whether plaintiff received treatment for his severe skin rash while in medical isolation (Docket No. 53, Pl. Affirm. First Set of Interrog. ¶¶ 1, 2 (first Interrogatories numbers 10, 11, 8, 12); cf. Docket Nos. 39, 40, 41, 43).  He claims that defendant Wendy Goins gave an "'evasive response'" to First Set of Interrogatory number 5 to verify her knowledge of plaintiff's tuberculosis test (Docket No. 53, Pl. Affirm. First Set of Interrog. ¶ 3; cf. Docket No. 39) and other defendants failed to respond to First Set of Interrogatories number 6 about plaintiff's tuberculosis treatment (Docket No. 53, Pl. Affirm. First Set of Interrog. ¶ 4).

As for his first set of Requests for Admissions (Docket No. 27), plaintiff notes that defendants (cf. Docket No. 35) have admitted request number 4, that they had no proof of a positive tuberculosis test, and number 6, that there was no proof in his medical record to substantiate a positive tuberculosis x-ray result (or as admitted by defendant Macomber) (Docket No. 53, Pl. Affirm. ¶¶ 5-6).  Plaintiff argues that defendants refusal to admit or deny other requests, for numbers 11, 12, 14, and 15, should be deemed Admissions (id. ¶ 7).

---

[2]Plaintiff does not identify these documents further and did not furnish them (either to Chambers or sought to have them filed under seal).

As for his Second Set of Interrogatories[3], plaintiff complains about the answers given by defendant Dr. Gregoire (cf. Docket No. 46; Docket No. 49 (defendants' joint answer to Second Set of Interrogatories)) (Docket No. 53, Pl. Affirm. 2d Set of Interrog. ¶¶ 1-3) and that Goins refused to respond to Interrogatories 9 and 13 (cf. Docket No. 45) (Docket No. 53, Pl. Affirm. 2d Set of Interrog. ¶ 4).

Regarding his Second Set of Requests for Admissions[4], plaintiff seeks admissions to the facts stated in his Requests that he claims specific individual defendants refused to admit or deny or made what he deemed to be evasive responses (Docket No. 53, Pl. Affirm. 2d Set of Request ¶¶ 1-11; cf. Docket No. 53 (defendants' responses)).  Defendants filed a collective response to plaintiff's Request, raising general objections to the Request (Docket No. 53, at 1-2).

Defendants filed under seal their attorney's responding declaration (Docket No. 59; see Docket Nos. 55, 60 (filed under seal)), as well as moving to have filed under seal certain discovery previously filed by them in this case (Docket No. 55; see Docket Nos. 21, 57, 50, 58). The Court granted defendants' motion to file under seal (Docket No. 56).

Defendants argue that the Court never directed them to respond to plaintiff's demands (Docket No. 59, Defs. Atty. Decl. ¶ 17), pointing to the status conference of May 22, 2007 (Docket No. 44).  They conclude that there was no Order to compel to warrant a subsequent motion for discovery sanctions (Docket No. 59, Defs. Atty. Decl. ¶ 19).  This is despite the fact

---

[3]Plaintiff has not filed his Second Set of Interrogatories, see Docket No. 59, Defs. Atty. Decl. ¶ 16, contrary to this Court's Local Civil Rule 7.1(a)(1), and did not annex them to his present motion.

[4]Again, plaintiff has not filed this discovery request, see Docket No. 59, Defs. Atty. Decl. ¶ 16, or included it with this present motion.

that earlier the Court granted in part plaintiff's motion to compel to have defendants answer

plaintiff's first set of Interrogatories and Requests for Admissions (Docket No. 33, Order at 6).

Further, the minutes from the May 22, 2007, conference indicated defendants' intention to

respond to plaintiff's second set of discovery demands before the discovery deadline (Docket

No. 44).

Defendants argue that sanctions should be denied because plaintiff's Requests for

Admissions were duplicative and cumulative of other discovery (Docket No. 59, Defs. Atty.

Decl. ¶¶ 26, 27).  Defendants do not address the asserted inadequacies in defendants'

interrogatory answers, save alleging that, since they have not been able to review plaintiff's

medical records, they had to refer plaintiff to that record to respond to his discovery demands (id.

¶ 30).

As for the disclosure of confidential information within plaintiff's medical records,

defendants contend that his other medical condition[5] was integral to the decision to place plaintiff

in medical isolation (Docket No. 59, Defs. Atty. Decl. ¶¶ 29, 55, Ex. A, Claim, Ex. C, "Copy of

Medical Memorandum 'Illegally Released'"; see Docket No. 21, Defs.' Rule 26 Disclosure,

Ex. B, bates number 00001, memorandum of Dr. Gregoire to Deputy Superintendent Weingarten,

Nov. 9, 2005).  Defendants claim that his medical record while in medical isolation is replete

with references to placement in isolation due to tuberculosis and the other condition (Docket

No. 59, Defs. Atty. Decl. ¶ 57).

---

[5]To retain plaintiff's confidentiality (and reaffirm the sealing of certain documents in this
matter, Docket No. 56), plaintiff's other condition will not be disclosed in this Order.

Defendants complain that plaintiff never executed a full authorization to release his medical records, including records privileged under Public Health Law § 2782 (Docket No. 59, Defs. Atty. Decl. ¶¶ 42-51; <u>see</u> Docket No. 21, Defs.' Rule 26 Disclosure, Ex. A). As a result, defendants have not reviewed plaintiffs' medical records (Docket No. 59, Defs. Atty. Decl. ¶ 53), but defendants now move for an Order to compel plaintiff to execute such an authorization (<u>id.</u> ¶ 61). Defendants also seek an extension of the dispositive motion date to thirty days after plaintiff provides executed authorization (<u>id.</u> ¶ 62).

Plaintiff replies that, if ordered to sign a medical authorization, the Court should order defendants to redact his name and inmate identification number from documents produced as a result of that authorization (Docket No. 63, Pl. Response to Defs. Objections ¶ 6).

*Disclosure of Confidential Materials*

Plaintiff also moves for this Court to exercise supplemental jurisdiction over his pending New York State Court of Claims proceeding, <u>Fox v. State of N.Y.</u>, Claim No. 113660 (N.Y. Ct. Cl., Albany County) (Docket No. 59, Defs. Atty. Decl. ¶¶ 4-5, Exs. A, B), regarding disclosure in this federal action of confidential materials within his medical records, despite a restriction written on his authorization for release of his medical records (Docket No. 53, Pl. Affirm. at 10, Ex. A). He argues that this state claim of violation of his confidentiality rights under the New York Public Health Law is directly related to this federal action. He now asserts that defendants opened the door to this claim, despite plaintiff not seeking to amend the federal Complaint (although in his reply he offers to supplement the Complaint under Rule 15(d), Docket No. 63, Pl. Response to Defs. Objections ¶¶ 11-12). The new claim is that defendants used his disability to discriminate against him in violation of Title II of the Americans with Disability Act and

7

Rehabilitation Act § 504 (Docket No. 53, Pl. Affirm. at 11).  He cites a similar action in which

the Court exercised supplemental jurisdiction over a state law privacy claim, see Devilla v.

Schriver, 245 F.3d 192, 195 (2d Cir. 2001) (id.).  Devilla involved disclosure of plaintiff's HIV

status to other inmates, id. at 194.

Defendants amplify what was disclosed that lead to the Court of Claims proceeding.

According to defense counsel, the medical staff at the Gouverneur Correctional Facility

(apparently were plaintiff was then housed) released plaintiff's medical records to defense

counsel and it revealed plaintiff's other condition and plaintiff learned of this disclosure when he

was served with Rule 26(a) initial disclosure (Docket No. 59, Defs. Atty. Decl. ¶ 33).  Disclosure

consisted of providing plaintiff with a copy of his medical records as part of defendants'

Rule 26(a) disclosure and filing that disclosure with the Court pursuant to this Court's

Scheduling Order and Local Civil Rule 7.1(a)(1) for filing of discovery in pro se cases (id. ¶¶ 45-

47 (disclosure not made to defendants themselves), 48, 52).  After the filing of the Court of

Claims action, the defendant State of New York filed a pre-Answer motion to dismiss that is

currently pending before the New York Court of Claims (id. ¶ 34, Ex. B).  Defense counsel cites

two state regulations that allowed disclosure of plaintiff's medical records (as an inmate) to the

Office of the Attorney General (id. ¶¶ 35, 36, citing 7 N.Y.C.R.R. §§ 5.24(b), 7.5(b)(7)).

As for plaintiff's motion to exercise supplemental jurisdiction over the pending Court of

Claims action, defendants argue that they are immune under the Eleventh Amendment and

sovereign immunity from suit in federal court (id. ¶¶ 38-41).  Plaintiff argues that Title II of the

Americans with Disabilities Act has been held to abrogate sovereign immunity (Docket No. 63,

Pl. Response to Defs. Objections ¶¶ 13-14).

In reply, plaintiff argues that, under New York law, the release of his confidential medical information was illegal, see Davidson v. State of N.Y., 3 A.D.3d 623, 625, 771 N.Y.S.2d 197, 199 (3d Dep't 2004) (Docket No. 63, Pl. Response to Defs. Objections ¶ 7).  He contends that this claim is so related to the claims in action in the pending federal case to justify exercise of supplemental jurisdiction (id. ¶ 9, quoting Diversified Carting Inc. v. City of N.Y., 425 F. Supp. 2d 85, 99 (S.D.N.Y. 2005)).  Plaintiff alternatively seeks leave to file a supplemental pleading under Rule 15(d) (id. ¶¶ 11-12).

## DISCUSSION

I.    Discovery Sanctions

   A.    Standards

Plaintiff seeks sanctions under Rule 37(b)(2)(B) for evidence preclusion and admission of requested admissions under Rule 37(c)(2).  Evidence preclusion under Rule 37(b) sanctions a party who fails to comply with an Order to produce, Fed. R. Civ. P. 37(b), (b)(2)(B).  As with imposition of Rule 37(d) sanctions for failure to comply with discovery demands, imposition of sanctions under Rule 37(b) must be weighed in light of the full record.  See Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures, 602 F.2d 1063, 1068 (2d Cir. 1979).

Rule 37(d) calls upon the Court to make such orders in regard to disclosure failures as are just.  This Court has wide discretion to impose sanctions and determine the type of sanction to be imposed under Rule 37(d).  See Reilly v. NatWest Markets Group Inc., 181 F.3d 253, 267 (2d Cir. 1999), cert. denied, 528 U.S. 1119 (2000).  The rule lists various sanctions including preclusion or dismissal of claims. Fed. R. Civ. P. 37(d), (b)(2)(A) (facts established), (b)(2)(B) (refusing to allow disobedient party to support claim or defense), (C) (striking pleadings), or (D)

(contempt of court for failing to produce witness, as well as payment of opponent's reasonable expenses, and attorneys' fees).  The dismissal of a defense or preclusion of evidence for failure to respond to a discovery request is a drastic remedy.  <u>Burnett v. Venturi</u>, 903 F. Supp. 304, 309 (N.D.N.Y. 1995); <u>see</u> <u>National Hockey League v. Metropolitan Hockey Club</u>, 427 U.S. 639, 643 (1976) (per curiam) (dismissal as severest sanction).  The increased sanction of Rule 37(b) arises because the party disregards both the discovery demand <u>and</u> the Court's Order compelling that production.  <u>See also</u> Fed. R. Civ. P. 37(b)(2)(D) (in lieu of foregoing order, party could be held in contempt of court for failing to obey discovery order).  Procedurally, under Rule 37(a)(2)(B) and this Court's Local Civil Rule 37, the movant needs to make a statement of good faith efforts made to resolve a discovery dispute before making motions to compel.

As for the Requests for Admissions, a matter is deemed admitted unless the parties served with the Request for Admissions serves a written answer or objection within 30 days, Fed. R. Civ. P. 36(a).  "If objection is made, the reasons therefor shall be stated.  The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter," <u>id.</u>  The answering party cannot give the lack of information or knowledge as a reason for failure to admit or deny "unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny," <u>id.</u>  The requesting party may move to determine the sufficiency of the answers or objections, <u>id.</u>, essentially what plaintiff has done here in moving for sanctions and declaration of admissions.  If an objection is not justified, the responding party will be ordered to answer.  If the answer does not comply with the requirements of Rule 36, the Court may order that the matter is admitted or that an amended answer be served

or the Court may defer the matter to a later pretrial conference.  Id.  The motion to compel

discovery under Rule 37(a) does not apply for a failure to respond to a Request for Admissions,

rather Rule 36's automatic admission provides the remedy, 8A Charles A. Wright, Arthur R.

Miller, & Richard L. Marcus, Federal Practice and Procedure § 2265, at 581 (Civil 2d ed. 1994).

    B.      Application

    The Court has reviewed defendants' Interrogatory answers and responses to plaintiff's

Requests for Admissions.

        1.      Interrogatories

    Plaintiff contends that defendants either failed to respond or responded evasively

(whatever that means to plaintiff) to his Interrogatories.  Defendants argue that they did not have

a full, formal authorization from plaintiff and thus could not review his entire medical record.

This lack of review is reflected in defendants' responses which generically refer to previously

furnished plaintiff's medical records in response to plaintiff's Interrogatories.

    Under Rule 33(d), business records (such as plaintiff's medical records) may be used to

answer interrogatories but the producing party must specify "in sufficient detail to permit the

interrogating party to locate and to identify, as readily as can the party served, the records from

which the answer may be ascertained."  This Court has broad discretion in deciding whether to

require answers to interrogatories, 8A Wright, Miller & Marcus, supra, § 2176, at 311 & n.1.

    Here, the fact defendants did not have plaintiff's full medical record excuses their

inability to respond specifically to his Interrogatories.  Defendants had produced part of that

record but without specifying which of the produced portion of that record applies to a given

Interrogatory.  Their attempt to respond by a general reference to the medical records defendants

have produced is not sufficient.  Of the portion of the medical record produced as responsive to

plaintiff's Interrogatories, defendants should have specified which part of that produced record

was responsive, subject to the normal caveat that such answers would be supplemented as

additional records (that is here plaintiff's more complete medical record upon his authorization

of its release) were obtained, see Fed. R. Civ. P. 26(e).

a.     First Set of Interrogatories

Plaintiff asked interrogatories about whether defendants delayed or prevented plaintiff's

access to dental or dermatologic treatment while he was in medical isolation (Interrogatory

Number 8); whether defendants were aware of DOCS Health Services Policy No. 1.18

("Policy 1.18") regarding the treatment of inmate who tested positive for tuberculosis and

whether they followed that policy (Interrogatories Number 10 and 11; cf. Docket No. 36

(producing copy of Policy)); and whether plaintiff received "adequate and appropriate" treatment

for his severe skin rash by a specialist while in medical isolation (Interrogatory Number 12)

(Docket No. 53, Pl. Affirm. First Set of Interrog. ¶¶ 2, 1; cf. e.g., Docket No. 39, Goins' Ans. to

Interrog.[6]).  For the first and last Interrogatories, defendants referred to plaintiff's voluminous

medical records and for the second and third Interrogatories, they refer to the policy itself and

deny allegations asserted in the Interrogatories.  Plaintiff also objects to Goins' failure to answer

Interrogatory Number 5 on her verification or personal knowledge of his tuberculosis test results

prior to admission to the isolation unit (Docket No. 53, Pl. Affirm. First Set of Interrog. ¶ 3),

where Goins answered by pointing plaintiff to the medical record (Docket No. 39, Goins Ans. to

---

[6]Similar Interrogatory answers were given by Dr. Gregoire, Docket No. 40, Macomber,
Docket No. 41, and Wright, Docket No. 43.

Interrog.), as she did in responding to Interrogatory Number 6 concerning treatment of plaintiff's alleged tuberculosis (Docket No. 53, Pl. Affirm. First Set of Interrog. ¶ 4; <u>see</u>, <u>e.g.</u>, Docket No. 39, Goins Ans.).

Defendants here just generally refer plaintiff to his voluminous medical record (<u>see</u> Docket No. 51 (medical record exhibit, in three electronically filed volumes of over 400 pages)) to answer his Interrogatories, without specifying where in that record answers to his questions could be found (either by plaintiff or by the served defendants).  Although, as defendants note in their objections to the Interrogatories, they are not obliged to produce documents to support plaintiff's allegations, defendants' production of voluminous records (that they had access to) in their answers to his Interrogatories fails the specification requirement of Rule 33(d).  The production of "unspecified responsive materials" to answer an interrogatory under Rule 33 is not sufficient, 8A Wright, Miller & Marcus, <u>supra</u>, § 2178, at 336-37; <u>see</u> <u>Matthews v. USAir, Inc.</u>, 882 F. Supp. 274, 275 (N.D.N.Y. 1995) (Rule 33(d) does not permit a party to answer simply by providing undifferentiated mass of business records).  The failure to specify here is more critical because, unlike a personal injury action commenced by a represented plaintiff, plaintiff here is proceeding <u>pro se</u> from prison; his ability to sift through hundreds of pages of medical records without specifying direction effectively fails to answer the Interrogatories he posed.  But defendants themselves have not reviewed the entire medical records due to not having a full authorization from plaintiff.

As for whether defendants were aware of and complied with DOCS policy for treating tuberculosis patients, defendants merely repeat the policy but fail to answer plaintiff's question.

The policy certainly was on the books but the questions are whether these defendants knew it and followed it.  Defendants thus should answer that Interrogatory.

           b.        Second Set of Interrogatories

       Defendants argue that they should not be sanctioned because there was no Order compelling them to answer plaintiff's second set of discovery demands, including these Interrogatories.  At the status conference on May 22, 2007, defendants advised that they intended to respond to these second set of demands prior to the discovery deadline (Docket No. 44).  But defendants responded to these demands and given plaintiff's pro se status, the Court will treat his motion as one seeking to compel and does hereby **deny** his motion for sanctions.

           1.        Interrogatories to Medical Personnel

       Plaintiff here asked whether Dr. Gregoire treated plaintiff for tuberculosis and give a detailed summary of the tests he performed (2d Interrog. Nos. 7, 14; Docket No. 53, Pl. Affirm., 2d Interrog. ¶¶ 1, 3; cf. Docket No. 46, Gregoire Ans. to 2d Interrog.).  Dr. Gregoire responded to both questions by referring plaintiff to his medical record (Docket No. 46, Gregoire Ans. to 2d Interrog.).  As stated above, this did not furnish specification required by Rule 33(d).  Plaintiff asked Dr. Gregoire and physician assistant Macomber to give "a detailed opinion . . . on the likelihood of 'extra-pulmonary T.B. being spread by 'airborne means'" (cf. Docket No. 46, Gregoire Ans. to 2d Interrog. No. 10; Docket No. 47, Macomber Ans. to 2d Interrog. No. 10).  Both defendants objected on the ground that the information sought was not relevant to a claim or defense and not reasonably calculated to lead to discovery of admissible evidence (id.), and plaintiff now objects that defendants' objection is improper (Docket No. 53, Pl. Affirm. 2d Set of Interrog. ¶ 2 (as to Dr. Gregorie)).  Dr. Gregoire's opinion, however, may lead to discovery of

admissible evidence as to the reason why plaintiff was placed and kept in medical isolation and defendants[7] should have answered.

Plaintiff asked nurse administrator Goins whether she verified and filed any paperwork with the regional infectious disease nurse for the September 22, 2005, test results (2d Interrog. No. 9) and whether she contacted the regional infectious disease nurse any time during plaintiff's first and second admissions to medical isolation (2d Interrog. No. 13), referring to the voluminous medical record (Docket No. 53, Pl. Affirm. 2d Set of Interrog. ¶ 4; Docket No. 45, Goins Ans. to 2d Interrog.).  Plaintiff asked Macomber if plaintiff tested his "axillary abscesses" (2d Interrog. No. 6; cf. Docket No. 47, Macomber Ans to 2d Interrog) but Macomber also referred plaintiff to his medical records.  As stated above, merely producing plaintiff's medical record without specifying where the answer to a particular interrogatory is violates Rule 33(d).

Plaintiff next asked Macomber (and Gregoire) for a detailed explanation for delaying the treatment of plaintiff's severe skin rash (2d Interrog. No. 12; cf. Docket No. 47, Macomber Ans. to 2d Interrog.; Docket No. 46, Gregoire Ans. to 2d Interrog.).  Macomber (and Gregoire) refer to DOCS Policy 1.18 (Docket No. 47, Macomber Ans. to 2d Interrog.; Docket No. 46, Gregoire Ans. to 2d Interrog.) but did not answer the question.  Plaintiff objects to Macomber's answer (but apparently not Gregoire's identical answer) (Docket No. 53, Pl. Affirm. 2d Interrog. ¶ 5).  As stated above for the similar answers to plaintiff's First Set of Interrogatories regarding Policy 1.18, merely restating the policy alone does not answer the interrogatory.  These

---

[7]Plaintiff did not object to Macomber's identical response to this interrogatory. Macomber should answer this question as well, if he can.

defendants also referred to the voluminous medical record which, without specification, does not respond to the Interrogatory.

Thus, the medical defendants are in a better position than either plaintiff or the other defendants to cull through plaintiff's disclosed medical record and identify specifically the document that answers his Interrogatories. Defendants are **compelled** to answer these Interrogatories with more specificity, by identifying the portion of plaintiff's medical record that is responsive to the queries.

Plaintiff next objects to defendants' collective interrogatory answers asking who tested him for tuberculosis (2d Interrog. No. 2), who was the x-ray technician who administered the x-ray prior to his admission to medical isolation (2d Interrog. No. 3), and who filed the paperwork that lead to his admission (2d Interrog. No. 4) (Docket No. 53, Pl. Affirm. 2d Interrog. ¶¶ 7-9; cf. Docket No. 49, Defs. Ans. to 2d Interrog.). As with other instances where defendants merely point to plaintiff's medical records as the answer to specific questions (Docket No. 49), defendants **need to specify** where within those records plaintiffs questions were answered.

2.      Interrogatories to Other Defendants

Plaintiff next objects to defendant Superintendent Poole's refusal to respond to Interrogatory Number 1, which asked Poole to "describe in detail the information he relied upon in justifying the plaintiff's detention in the medical isolation ward from September 22, 2005 to October 15, 2005" (Docket No. 53, Pl. Affirm. 2d Interrog. ¶ 6; cf. Docket No. 48, Poole Ans. to 2d Interrog.). Superintendent Poole's response cites plaintiff to his medical record. As stated above, merely furnishing the hundreds of pages of medical records and inviting plaintiff to find the answer to his particular question fails to answer the Interrogatory. This is especially true

where the records were created by medical professionals and not by Superintendent Poole.  Since the Interrogatory is posed to Superintendent Poole, however, pointing to the medical record in general may be specific as that defendant may respond.

3.     Interrogatory on Policy 1.18

Plaintiff's Second Interrogatory Number 8 asked whether Policy 1.18 subdivisions IV and V "provide 'equal protection and due process' rights to 'H.I.V. Positive and Non-H.I.V. Positive inmates in an 'equal manner?'" (cf. Docket No. 49).  Defendants answered by referring to the policy (id.).  Plaintiff objects that defendants did not respond to the question (Docket No. 53, Pl. Affirm. 2d Set of Interrog. ¶ 9).  Subdivisions IV and V of Policy 1.18 discuss the detection and containment procedures for tubercular inmates (see Docket No. 36, bates stamped numbers 000422-34).  Plaintiff's interrogatory, however, seeks a legal conclusion (namely defendants' opinion construing portions of the Policy as applied to inmates with or without a particular condition).  That Interrogatory also seeks an answer to a legal question unconnected to the facts in the case at bar as presently alleged, see Abbott v. United States, 177 F.R.D. 92, 93 (N.D.N.Y. 1997).  This case is currently about whether defendants had a medical basis to isolate plaintiff due to tuberculosis; aside from the confidentiality issues (discussed below) the case has not included plaintiff's other ailments.  Barring leave to amend the Complaint, inquiry about treatment of inmates with other ailments is beyond the scope of discovering relevant evidence or is reasonably calculated to lead to the discovery of admissible evidence for the present claims, see Fed. R. Civ. P. 26(b)(1).  Therefore, plaintiff's motion to compel answer to this particular Interrogatory is **denied**.

17

2.      Request for Admissions

Although placed in the chapter of Depositions and Discovery in the Federal Rules of

Civil Procedure, Requests for Admissions under Rule 36 are not a discovery procedure at all, see

Safeco of America v. Rawstron, 181 F.R.D. 441, 445 (C.D. Cal. 1998), and "a party who desires

to discover what the facts are should resort to other discovery rules rather than Rule 36,"

8A Wright, Miller & Marcus, supra, § 2253, at 524, 524-25.  Rule 36 may not be used to secure

production of documents in circumvention of Rule 34, Bede v. Beck, 11 F.R.D. 293, 294 (N.D.

Ohio 1951).  The purpose of Rule 36 is for a party to request another party to admit the truth of

any matters within the scope of Rule 26(b) discovery,8A Wright, Miller & Marcus, supra, §2251,

at 519.  Their function is to define and limit the matters in controversy between the parties to

expedite the action by having the parties concede facts or points otherwise in contention, id.

§ 2252, at 521-22 (quoting Finman, The Request for Admission in Federal Civil Procedure,

71 Yale L.J. 371, 376 (1962)).  An Admission, unless it is withdrawn, see Fed. R. Civ. P. 36(b),

concludes the matter and avoids any need for proof at trial, 8A Wright, Miller & Marcus, supra,

§ 2253, at 526.  Each request should be phrased so that it can be admitted or denied without

explanation, id. § 2258, at 546-47.  Thus, the response to the request should not produce

documents with it (unless the request asks about the genuineness of the documents), but (if a

response is made[8]) the response should be a statement making a specific admission, deny, object

to the request, or set out reasons why it cannot truthfully be admitted or denied, id. § 2259 (see

also Docket No. 63, Pl. Response to Defs. Objections ¶ 4).

---

[8]If no response is made, the request is deemed admitted, Fed. R. Civ. P. 36(a); 8A Wright,
Miller & Marcus, supra, § 2259, at 549-51.

Here, plaintiff posed compound requests that defendants often responded to in part or referred to plaintiff's medical record for the ultimate answer. This does not constitute a clear admission or denial.

        a.     First Request

As for plaintiff's first Request for Admissions number 4, defendants admit that plaintiff had a positive T.B. test in 1992 (Docket No. 35), in addressing the request about the reason for his 2005 admission to medical isolation was due to his positive T.B. test in 1990 or 1992. Plaintiff complains that since defendants have not produced the 1992 test result, there is no proof to substantiate Dr. Gregoire's medical memorandum of November 9, 2005, which supports plaintiff's admission (Docket No. 53, Pl. Affirm. ¶ 5). Defendants' response did not address the entire admission.

In the Request for Admissions number 6, plaintiff wanted Macomber to admit or deny whether plaintiff's September 2005 x-ray results were negative for tuberculosis (cf. Docket No. 35). Rather than admit or deny, defendants refer plaintiff to plaintiff's medical records (id.). Plaintiff objects because of the absence of proof (Docket No. 53, Pl. Affirm. ¶ 6), but for Request for Admissions the responding party need not support its position, only to justify the level of inquiry it made in responding to the request, see Fed. R. Civ. P. 36(a). Defendants also referred to plaintiff's medical record regarding Request of Admissions numbers 11, 12, 14, and 15, in most instances not stating whether the fact asserted in the requested admission was admitted or denied (cf. Docket No. 35, Response to No. 12, denial and reference to medical record). Defendants need to respond to this request rather than refer to the medical record, but their ability

to respond is tied to the lack of plaintiff's authorization to review his medical record (which could have been stated as a response why they could not admit or deny the Requests).

b. Second Request

Plaintiff contends that defendants have not admitted or denied almost all of requested Admissions.  Instead, defendants almost generally refer plaintiff to his medical records as their response to the Requests for Admissions.  Defendants should have responded to the particular Requests for Admissions (here, Second Requests for Admissions numbers 3, 4, 6, 8, 9, 17, 18) rather than merely citing generically to his medical records.  As for plaintiff's Second Request for Admissions number 1 (Docket No. 53, Pl. Affirm. 2d Request ¶ 1), defendants did admit that plaintiff tested positive for tuberculosis in 1992 (Docket No. 50, Defs. Response to 2d Request for Admissions), prior to his admission to medical isolation.

Plaintiff's Second Requests number 5, 7, and 13 involve Policy 1.18.  Defendants denied sufficiently all three of these requested Admissions.

Plaintiff's Second Request number 11 asked if Five Points received federal funds, which defendants objected to as not being relevant or reasonably calculated to lead to discovery of admissible evidence (Docket No. 50, Defs. Response; <u>see</u> Docket No. 53, Pl. Affirm. 2d Request ¶ 9).  But one element of plaintiff's sixth cause of action under § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), is that the public entity receives federal funds (<u>see</u> Docket No. 1, Compl. at 10).  Thus, a Request for Admissions on whether Five Points receives federal funds is reasonably calculated to lead to discovery of admissible evidence, <u>cf.</u> Fed. R. Civ. P. 26(b)(1), and **should have been admitted or denied**.

20

Plaintiff's Second Request number 13 asked Superintendent Poole whether plaintiff was detained in medical isolation from September 22 to October 19, 2005, in violation of the Americans with Disabilities Act, which Poole (with the other defendants) denied (Docket No. 50, Defs. Response).  Request number 14 asked whether Macomber admitted that plaintiff was discriminated against by being denied treatment of his rash while in medical isolation, which Macomber (and the other defendants) also denied (id.).  Plaintiff now complains that Poole and Macomber refused to admit or deny plaintiff's claims (Docket No. 53, Pl. Affirm. 2d Response ¶ 9).  But Poole did deny plaintiff's requested Admissions and that Admissions sought essentially Poole's pleading on the ultimate merits of that claim, which he did already in his Answer (see Docket No. 6).

C.      Appropriate Sanction

As found above, defendants' answers and responses to requested Admissions are incomplete and sanctionable.  Plaintiff seeks the ultimate sanction of defensive claim preclusion or (for the requested Admissions) having the facts stated in the Requests for Admissions deemed admitted (see Docket No. 53, Pl. Affirm. at 10, 3-4, 7-10).  Defendants argue that they should not be sanctioned because there was no prior Order to compel (in particular for plaintiff's second set of discovery demands) and that plaintiff deprived them of a full authorization to release his medical record, inhibiting them from responding to his discovery.

The key to answering these Interrogatories is plaintiff authorizing release of his entire medical record without condition.  Once plaintiff has so authorized, defendants can better respond to the Interrogatories with specific references within the medical record to answer plaintiff's questions and defendants can respond to the Requests for Admissions.

Thus, the ultimate sanction sought by plaintiff of defense preclusion is **not** appropriate at this time and plaintiff's motion for sanctions is **denied**; however, plaintiff is entitled to compelled answers to its inquiries once he fully authorizes release of his medical record.  If plaintiff refuses or withholds authorization over any part of his record, he directly inhibits defendants' ability to produce responsive discovery in this case.  As discussed below, plaintiff's concerns about confidentiality will be alleviated by requiring any medical records produced under this authorization be filed, see  W.D.N.Y. Loc. Civ. R. 7.1(a)(1), under seal.

II.     Disclosure of Confidential Documents

Defendants produced plaintiff's medical and filed them with the Court (Docket Nos. 21, 51), pursuant to this Court's Local Civil Rule regarding pro se actions, W.D.N.Y. Loc. Civ. R. 7.1(a)(1), but not under seal.  Defendants later moved to place their filed discovery under seal (Docket No. 55), which was granted (Docket No. 56).

As defendants stated (Docket No. 59, Defs. Atty. Decl. ¶¶ 45-48, 52), only plaintiff himself and the Court (now under seal) have his medical record including the offending documents within it and not the individual defendants themselves.  With this Court's electronic case filing, unfortunately plaintiff's discovery was available for public view by anyone with a PACER account prior to the sealing of these documents.  By sealing the records, the exposure of the documents has been mitigated.  Thus, sanctions **are not warranted** for defendants following Court Order and this Court's Local Rules in filing plaintiff's medical records.

III.     Supplemental Jurisdiction

Plaintiff also seeks this Court exercise jurisdiction over his pending state Court of Claims action, <u>Fox v. State of N.Y.</u>, Claim No. 113660 (N.Y. Ct. Cl., Albany County) (Docket No. 53), alleging disclosure of confidential information in this action.

Under 28 U.S.C. § 1367, the Court may exercise supplemental jurisdiction "over all other claims that as so related to claims in the action," § 1367(a), but the Court may decline to exercise this jurisdiction if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction," <u>id.</u> § 1367(c)(4).  Under <u>Railroad Comm'n of Tex. v. Pullman Co.</u>, 312 U.S. 496 (1941), federal courts have applied an abstention doctrine for state court action to avoid exercising jurisdiction over actions currently pending in state courts.

Plaintiff, in effect, seeks removal of his pending New York State Court of Claims action. Plaintiff has not sought leave to amend his Complaint to allege here his state claims that are alleged before the Court of Claims.  Plaintiff does not state the status of the Court of Claims action, but defendants report that a motion to dismiss is pending in that action (Docket No. 59, Defs. Atty. Decl. ¶¶ 4, 6, 34, Ex. B).

The issue before the Court of Claims is plaintiff's damages arising from the dissemination of confidential information in this action, allegedly in violation of New York State Public Health Law.  Plaintiff could have sought leave to amend his Complaint here to allege this state law claim, thus asking this Court to exercise supplemental jurisdiction over that claim. Instead, he chose the state court forum to litigate this claim, but has offered (in reply) to supplement his federal Complaint (Docket No. 63, Pl. Response to Defs. Opposition ¶¶ 11-12). Plaintiff cannot remove his New York State Court of Claims action to this Court, <u>see</u> 28 U.S.C.

23

§§ 1441(a), 1446(a); <u>Frankenberg v. Superior Distributors, Inc.</u>, 961 F. Supp. 1560 (S.D. Ala.

1997) (plaintiff in diversity action cannot remove state action on the basis of supplemental

jurisdiction); <u>see also</u> <u>In re Estate of Tabas</u>, 879 F. Supp. 464 (E.D. Pa. 1995) (supplemental

jurisdiction is not an independent source of removal jurisdiction, an already existing federal

action cannot provide mechanism for removal of nonremovable state action).  Supplemental

jurisdiction does not provide the basis for removal, <u>Snygenta Crop Protection, Inc. v. Hensen</u>,

537 U.S. 28, 34 (2002); <u>Hawaii v. Abbott Labs., Inc.</u>, 469 F. Supp. 2d 835, 838 (D. Haw. 2006).

The case plaintiff cites, <u>Devilla v. Schriver</u>, <u>supra</u>, 245 F.3d 192, 195, is distinguishable, where

the plaintiff there alleged New York Public Health law confidentiality claim in her federal

complaint and did not seek (as plaintiff here seeks) to exercise federal supplemental jurisdiction

over a pending state action.

The Court **declines** to exercise supplemental jurisdiction over a pending state action.

This is an instance where federal court abstention is appropriate, even though the alleged state

law claim arose from actions within the federal court.  The Court of Claims matter has pending a

motion to dismiss that may dispose of that proceeding.  Plaintiff had the choice of forum (federal

or state) for his breach of confidentiality claim and chose the latter.  He cannot then change his

mind while the state action is pending to raise the same claim in (or remove that claim to) federal

court.  Therefore, plaintiff's request for this Court to exercise jurisdiction over plaintiff's

unspecified state law claims is **denied**.  As a result, the Court will not address the parties'

sovereign immunity/Eleventh Amendment arguments (Docket No. 59, Defs. Atty. Decl. ¶¶ 38-

41; Docket No. 63, Pl. Response to Defs. Opposition ¶¶ 13-14) against exercising supplemental

jurisdiction.

IV.     Plaintiff's Medical Authorization and Scheduling Order

In response, defendants argue that they cannot respond to plaintiff's allegations without authorization to review his entire medical record, hence explaining the generic responses to plaintiff's interrogatories.  According to defendants, plaintiff's tuberculosis and his other condition were integral to the decision to place plaintiff in medical isolation and, in order to respond in this case, defendants need authorization to review the entire record.  (Docket No. 59, Defs. Atty. Decl. ¶¶ 59-62.)  Defendants seek additional time, thirty days after receipt of full authorizations, to have dispositive motions due

Defendants' requests herein are **granted**.  The Scheduling Order shall be amended to set forth when plaintiff is to execute full medical authorizations and the deadlines for discovery and dispositive motions, as set forth in the Conclusion.  Plaintiff placed his medical condition in issue.  If he refuses to execute the full authorization called for in this Order, he risks having this action dismissed with prejudice.  Parties are also ordered to file the medical record produced from this full authorization **under seal**.  Redaction of plaintiff's name and inmate identification number (cf. Docket No. 63, Pl. Response to Defs. Objections ¶ 6) thus will be unnecessary.

## CONCLUSION

For the reasons stated above, plaintiff's motion (Docket No. 52) for discovery sanctions is **granted in part, denied in part**, as specified above.  Plaintiff's motion (id.) for this Court to exercise supplemental jurisdiction over his pending New York State Court of Claims proceeding is **denied**.

Pursuant to the application of defendants (Docket No. 59), plaintiff is ORDERED to execute a full authorization for access by defendants in this action to his medical records.  If

plaintiff fails to execute this authorization or conditions that authorization to limit what portion

of his medical records are produced, this action may be dismissed for failure to prosecute, <u>see</u>

Fed. R. Civ. P. 37(b)(2)(C), 41(b).

<b>THIRD AMENDED SCHEDULING ORDER</b>

The Amended Scheduling Order (Docket Nos. 32, 33) is hereby modified as follows

(unless otherwise changed below, the remaining dates in the previous Scheduling Order continue

in effect):

1.    Plaintiff is to execute a full medical authorization provided by defendants by

       **September 17, 2007**.

2.    All discovery in this case shall conclude on **November 19, 2007**.  All motions to compel

       shall be due at least **30 days prior** to that discovery cutoff date.

3.    Dispositive motions, if any, shall be filed no later than **January 22, 2008**.

4.    In the event no dispositive motions are filed, pretrial statements in strict compliance with

       Local Civil Rule 16.1(d) shall be <u>filed and served</u> no later than **March 24, 2008**.

5.    This Court shall schedule the final pretrial conference and the start of the jury trial at a

       later date.

       So Ordered.


                                                      _____/s/ Hugh B. Scott_____
                                                      Honorable Hugh B. Scott
                                                      United States Magistrate Judge

Dated: Buffalo, New York
           August 31, 2007