UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTHONY FOX,

Plaintiff,

v.

THOMAS POOLE, et al.,

Defendants.

**Hon. Hugh B. Scott**

06CV148

(CONSENT)

**Order**

Before the Court is plaintiff's motion (Docket No. 130[1]) for reconsideration of summary judgment granted to defendants (see Docket Nos. 124, 125) and vacatur of that judgment. The parties previously consented to proceed before the undersigned as Magistrate Judge (Docket No. 17).

Responses to this motion initially were due by July 1, 2008, and any reply was due by July 14, 2008 (Docket No. 134). At defendants' request, responses were due by July 3, 2008, and any reply by July 16, 2008, with the motion deemed submitted on July 16, 2008 (Docket No. 135).

---

[1]In support of this motion, plaintiff filed his Statement of Undisputed and Disputed Facts, Docket No. 131 (hereinafter "Pl. Statement"); his Affidavit, Docket No. 132; and his Memorandum, Docket No. 133. Plaintiff did not submit a reply.
    In opposition, defendants filed their attorney's Declaration in Opposition to Motion to Vacate, Docket No. 136.

BACKGROUND

Familiarity with the prior Order (Docket No. 124) is presumed.  The issue in this case is the 2005 medical isolation wherein plaintiff was placed due to testing positive for tuberculosis ("T.B.") during his incarceration.  As a result of his prior positive tests in the 1990s and his refusal to be tested upon his transfer to the Five Points Correctional Facility ("Five Points"), plaintiff was placed in medical isolation for at least three months.  He alleges that he was deprived of his constitutional rights and this isolation violated Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act for depriving him of medial and dental treatment and other prison facilities while in isolation due to his disabilities.

Plaintiff now moves for reconsideration of the Order granting summary judgment to defendants which dismissed his Amended Complaint.  He contends that there are material issues of fact (both from his opposition to the earlier motion and additional facts now raised) that should preclude summary judgment in this case (see Docket No. 133, Pl. Memo. at 4).  For example, plaintiff now argues that there is a material issue of fact whether he refused A.F.B. sputum test and H.A.A.R.T. treatment as contended by defendants (id.; Docket No. 132, Pl. Aff. ¶¶ 7-11; cf. Docket No. 118, Gregiore Decl. ¶¶ 11, 12, 18).  Plaintiff claims that he has not received the medical records defendants claim support their contentions, namely positive T.B. test results in 1992 and 1998, hence depriving them of entitlement to judgment (Docket No. 131, Pl. Statement ¶¶ 3, 9; Docket No. 133, Pl. Memo. at 4, 5).  Plaintiff presented the unsigned medical refusal form as indicating the existence of material issue of fact (Docket No. 132, Pl. Aff. ¶ 9, Ex. A, Bates No. 0344).  That form, dated September 26, 2005, lists various treatments

2

and test offered to plaintiff that he apparently refused, with the reason given that he refused to sign the form (id., Ex. A, Bates No. 0344).

Regarding the 1990s T.B. tests, plaintiff argues that, if he had tested positive for T.B., he would be under a regime of annual or bi-annual T.B. testing, which he was not under (Docket No. 133, Pl. Memo. at 5).

According to plaintiff, the only basis for the T.B. isolation in September 2005 was his weight loss and axillary abscesses without diagnostic testing, raising in plaintiff's mind another material issue of fact.

Plaintiff argues that he alleged that defendants acted in their individual capacities and acted beyond the scope of their official duties, hence removing any Eleventh Amendment immunity from them (Docket No. 133, Pl. Memo. at 6).  He argues that defendant New York State is not immune because of the unconstitutional policy enacted by its employee, defendant Dr. Wright (id. at 8).

As for plaintiff's Americans with Disabilities Act and Rehabilitation Act claims, he argues that the Court misapplied the law, that Congress abrogated Eleventh Amendment immunity for state violations of those acts (id. at 9-11).

As for his retaliation claims, plaintiff claims that he sufficiently alleged retaliation, from defendants' use of "un-verified documentation" [sic] to support their decision to place him in medical isolation in retaliation for filing grievances for denial of treatment of his skin rashes, and for grievances and for filing a law suit while he was in Sing Sing Correctional Facility (id. at 11-12).  He argues that the Complaint need not specify details in order to defeat a summary judgment motion to dismiss that pleading (id. at 13).

3

Defendants simply respond that plaintiff has failed to address or meet the grounds for reconsideration of a judgment under Rule 60(b) (Docket No. 136, Defs. Atty. Decl. ¶¶ 3, 4-9) and that plaintiff merely reiterates his allegations in the case (id. ¶ 3).

DISCUSSION

I.       Reconsideration Standard

Plaintiff moves for reconsideration under Federal Rule of Civil Procedure 60(b) (Docket No. 130). Under the pertinent subsection of that rule, on motion the Court may relieve a party from a final judgment or order for "any other reason that justified relief," Fed. R. Civ. P. 60(b)(6) (effective Dec. 1, 2007) (see Docket No. 133, Pl. Memo. at 2, 20, arguing for relief from the judgment because of factual and legal errors). A motion for relief from judgment under Rule 60(b) is addressed to the discretion of the Court, but there are extreme situations that the result is foreordained and it would be an abuse of discretion either to grant or deny relief, 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2857, at 254-55, § 2864, at 376 (Rule 60(b)(6)) (Civil 2d ed. 1995). The policy of the law favoring hearing claims on their merits must be balanced against the desire to achieve finality in litigation, id. at 256-57. Also factored herein is that plaintiff has proceeded throughout this action as a pro se inmate, asserting his claims while incarcerated. A motion under Rule 60(b)(6) requires exceptional or extraordinary circumstances shown by the movant, 11 Federal Practice and Procedure, supra, § 2857, at 259. A timely motion under Rule 60(b)(6) is granted if the Court thinks that justice requires it and is denied if the Court feels otherwise, id., § 2864, at 355-57, for example, when there has been an insufficient showing of extraordinary circumstances to

4

warrant relief, id. at 368.  Relief under Rule 60(b)(6) is exclusive of relief available under other provisions of Rule 60(b)[2], id. at 362.

Defendants contend here that plaintiff has not met the bases for other provisions of relief (see Docket No. 136, Defs. Atty. Decl. ¶¶ 4-9).  Thus, the issue here is whether plaintiff makes a sufficient showing of extraordinary circumstances or other reasons aside from Rule 60(b)(1)-(5) grounds for vacating the judgment dismissing his action under Rule 60(b)(6).  Next, each ground asserted by plaintiff will be examined.

II.     Issues of Material Fact

Plaintiff argues that the Court erred in not recognizing certain issues of material fact in granting summary judgment to defendants.  But there contentions fail to show extraordinary circumstances or other reasons aside from Rule 60(b)(1)-(5) grounds (namely, possibly mistake, Fed. R. Civ. P. 60(b)(1); see 11 Federal Practice and Procedure, supra, § 2858, at 295 (commentator suggesting Rule 60(b)(1) applies to inadvertent judicial oversight rather than fundamental misconception of law, citing Note, Federal Rule 60(b): Finality of Civil Judgment v. Self-Correction by District Court of Judicial Error of Law, 43 Notre Dame Law. 98, 104 (1967))) for granting him relief.  Even if seen as a judicial mistake and a fundamental misconception of law, relief should be denied, id. at 297-98.

---

[2]Mistake, inadvertence, surprise, or excusable neglect, Fed. R. Civ. P. 60(b)(1); newly discovered evidence that could not be discovered in time for a motion for a new trial, id. R. 60(b)(2); fraud, misrepresentation, or misconduct by opposing party, id. R. 60(b)(3); judgment is void, id. R. 60(b)(4); or judgment has been satisfied, released or discharged, id. R. 60(b)(5).

A.      Tuberculosis Testing in 1990s

Regarding plaintiff's 1992 and 1998 TB testing, that was cited by defendants and produced were two pages from plaintiff's medical record (Docket No. 118, Gregiore Decl. ¶ 11; Bates Nos. 0002, 0005), cited by plaintiff in his original opposition to defendants' motion (cf. Docket No. 122, Pl. Aff. Ex. B).  Those two pages were summaries of plaintiff's health history in prior facilities where he was assigned.  What plaintiff apparently seeks is the underlying medical records supporting the summaries from the facilities where plaintiff was incarcerated in 1992 and 1998, at Sing Sing Correctional Facility.  Defendants have not produced those underlying records.  The notes from Five Points on September 26, 2005, indicated that plaintiff had negative skin tests for TB, save for the September 1992 positive test at Sing Sing Correctional Facility (see id.).

Plaintiff has not shown that the summaries are inaccurate, aside from his general denials that he made in opposing the original summary judgment motion.  He only argued initially that the 1992 record indicated that he was tested at Ulster Correctional Institution on the same date as at Sing Sing, concluding such was an impossibility and a factual issue (Docket No. 122, Pl. Disputed Facts ¶ 5, Ex. B; Docket No. 124, Order at 7-8).  In opposing a summary judgment motion (and now arguing for vacatur of the summary judgment entered), plaintiff is obliged to respond with specific facts showing a genuine issue for trial and not merely on allegations or denials in his pleadings, Fed. R. Civ. P. 56(e)(2).  Therefore, there is **no extraordinary circumstance** to warrant relief to plaintiff on this ground.

B.      Refusal to Take Tuberculosis Testing

Next, plaintiff contends there is a material issue of fact as to whether he refused T.B. tests following his transfer to Five Points.  At issue here are treatment notes at that facility on September 2005.  The summary of treatment notes indicates that plaintiff refused AFT sputum and HAART testing (id., Bates No. 0005).  The progress notes for the September 22, 2005, examination reveal that plaintiff got upset about the accusation that he was HIV positive and refused testing for HIV.  Plaintiff also denied that he had symptoms for T.B.  As a precaution, plaintiff then was admitted to medical isolation.  (See Docket No. 118, Gregoire Decl. ¶ 12, citing Bates No. 0172.)  The notes from September 26, 2005, state that plaintiff said that he has tested positive for T.B. twice in the past, but was testing negative now because of immune suppression.  Plaintiff was told that he was to be placed in medical isolation "for quite a while, until TB can be ruled out."  (Id.)   Defendant Dr. Gregoire cites to subsequent test results that were obtained from plaintiff in October 2005 (Docket No. 118, Gregoire Decl. ¶ 12, citing Bates Nos. 0130-32).

Plaintiff, in his reconsideration motion, attaches a copy of the refusal of medical examination and/or treatment form from September 26, 2005 (Docket No. 132, Ex. A, Bates No. 0344), wherein, when offered medication, culture for axillary abscesses and further HIV and preventative medication as well as T.B. testing and treatment, the form states as the reason for his refusal was plaintiff "refused to sign."  But plaintiff's action in declining to execute this refusal of treatment form establishes that he refused treatment and **does not create a material issue of fact**.  Therefore, plaintiff fails to show **extraordinary circumstances** here to warrant relief.

III.     Eleventh Amendment, ADA and Rehabilitation Act Claims

Plaintiff argues that he sued defendants in their individual capacities, in that they acted outside of the scope of their respective employment in their actions against him (Docket No. 133, Pl. Memo. at 6).  Plaintiff is correct that the Eleventh Amendment immunity applies only for the prison officials and employees in their official capacities since the state in that instance is the real party in interest, see Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989), but defendants' motion was to invoke Eleventh Amendment immunity as to the official capacity grounds alleged by plaintiff.  In listing the defendants in his Amended Complaint (Docket No. 92), plaintiff asserted claims against them both individual and official capacities (id. at 2-3), although he later argued that he did not assert claims under the Americans with Disabilities Act or the Rehabilitation Act against the individual defendants in their individual capacities (Docket No. 123, Pl. Memo. at 7; see Docket No. 124, Order at 16).  The Amended Complaint for the fifth and sixth claims did not expressly state that they were against the defendants in their official capacities only (cf. Docket No. 92).

Next, plaintiff argues that claims should remain as to defendant New York State because of its unconstitutional policy regarding HIV+ and non-HIV+ inmates suspected of also having T.B. (Docket No. 133, Pl. Memo. at 8).

As for the Americans with Disabilities Act and Rehabilitation Act claims, plaintiff concludes that the Court misapplied the law and disregarded the fact that Congress abrogated states' Eleventh Amendment immunity and that these acts apply to state prison inmates (id. at 9).  Plaintiff cites to case law within the Second Circuit that predates the United States Supreme Court decisions cited by this Court (Docket No. 124, Order at 15-20), compare Hallett v. New

8

York States Dep't of Correctional Servs., 109 F. Supp. 2d 190, 197, 198 (S.D.N.Y. 2000) (citing

Kilcullen v. New York State Dep't of Labor, 205 F.3d 77, 82 (2d Cir. 2000); Jackson v. New

York State Dep't of Labor, 205 F.3d 562 (2d Cir. 2000); Muller v. Costello, 187 F.3d 298 (2d

Cir. 1999)) with United States v. Georgia, 546 U.S. 151, 154, 158 (2006) (recognizing

abrogation only for suits vindicating a fundamental right, here Fourteenth Amendment conditions

of prison confinement); Tennessee v. Lane, 541 U.S. 509 (2004) (recognizing abrogation only for

suits vindicating a fundamental right, here access to the courts); Board of Trustees of Univ. of

Ala. v. Garrett, 531 U.S. 356, 363-64 (2001).  In seeking reconsideration plaintiff, however, fails

to show the existence of an actual constitutional violation or, under Garcia v. State University of

New York Health Sciences Center of Brooklyn, 280 F.3d 98, 112 (2d Cir. 2001), proof of

discriminatory animus or ill on defendants' part due to plaintiff's disabilities.

      Plaintiff cites to cases where officials sued in their official capacity may be sued in

federal court for injunctive relief (id. at 7).  Plaintiff in this case, however, is only suing for

punitive and compensatory damages and not for injunctive relief.  Thus, the cases he cites are not

applicable to his situation.

      As a result, the Court **denies** plaintiff's motion to reconsider on these grounds.

IV.    Other Claims

      Plaintiff argues that he sufficiently alleged a retaliation claim to survive summary

judgment, arguing that the Amended Complaint could survive a motion to dismiss on the level of

the specificity of its pleadings (Docket No. 133, Pl. Memo. at 11-13).  On a motion for summary

judgment, however, the issue is not the sufficiency of the pleadings rather whether evidence has

been introduced by the opponent to establish a material issue of fact for the claims alleged in the

pleadings to defeat a summary judgment motion.  Rule 56(e)(2) provides that the party opposing

summary judgment "may not rely merely on allegations or denials in its own pleadings; rather, its

response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a

genuine issue for trial," Fed. R. Civ. P. 56(e)(2).  While plaintiff, in opposing summary

judgment, initially raised as a disputed fact the chronology of his transfer from Eastern

Correctional Facility (while he had grievances pending) and his placement in a double cell

against his wishes (Docket No. 122, Pl. Disputed Facts, ¶ 7, Ex. C), he introduced no other

evidence showing that his subsequent T.B. examination (one month after this transfer) was

somehow retaliatory.  He failed to present evidence connecting this chronology with his

subsequent T.B. examination.  He presented no evidence that the medical defendants (the persons

who conducted the T.B. examination and determined that he should be placed in isolation) were

aware of his grievances to make their actions retaliatory or any proof of a conspiracy with

supervisory prison officials who may have been aware of plaintiff's grievances (again, without

showing proof of that knowledge by those officials) to have ordered the T.B. examination and

medical isolation.

Plaintiff now argues that the Court did not appropriately address his claims under the

fourth cause of action (Docket No. 133, Pl. Memo. at 15).  That cause of action alleges due

process and equal protection violations under the Fourteenth Amendment for plaintiff's

placement in medical isolation (Docket No. 92, Am. Compl. at 9-10).  Plaintiff distinguishes the

cases cited by the Court since they found that the legislative determination about persons with

certain ailments is distinct from the administrative decision by defendant Dr. Wright in drafting

Health Service Policy Manual § 1.18 and its distinguishing between HIV+ and non-HIV+

inmates (see Docket No. 133, Pl. Memo. at 15).  But that distinction is meaningless since the

Equal Protection Clause reaches government action (regardless of branch or agency of

government rendering the decision) that treats similar persons differently due to an invidious

characteristic or on an irrational basis, cf. David v. Local 801, Danbury Fire Fighters Ass'n,

899 F. Supp. 78, 79-80 (D. Conn. 1995) (action against union and city).  For example, in David,

plaintiff alleged that he was discriminated against by the fire fighters union and the City of

Danbury, Connecticut, due to his homosexuality and his relationship with an AIDS patient.  The

court there held that homosexuality was not a suspect classification, warranting only rational

basis review under the Equal Protection Clause and sexual affiliation with an AIDS patient "has

not been afforded suspect or quasi-suspect classification for purposes of equal protection

scrutiny," id. at 80.  It does not matter under the Fourteenth Amendment that an administrator

made the distinction between HIV+ and non-HIV+ inmates in how they are evaluated and treated

for T.B. rather than the legislature.  The issue is whether the government can make this

distinction consistent with the Equal Protection Clause.  Since a suspect classification is not

involved, the distinction between inmates with or without HIV+ status is governed by the rational

basis analysis under the Equal Protection Clause, see David, supra, 899 F. Supp. at 80.  As found

in the previous Order (Docket No. 124, Order at 25-27), persons who are HIV+ are not a

protected class or a suspect classification.  Thus, plaintiff **fails to show extraordinary**

**circumstances** to warrant relief from the judgment dismissing this claims.

Plaintiff next argues that the Court erred in its consideration of his deliberate indifference

claim (Docket No. 133, Pl. Memo. at 16-17).  Plaintiff, however, has not shown extraordinary

circumstances to warrant relief.  As for the first element of a deliberate indifference claim, the

objective standard of deprivation of medical treatment, plaintiff points out portions of his

medical record that support the deprivation (id. at 16, citing Bates Nos. 1056-0177), but the last

pages cited indicated that he received treatment for his complained skin rash and intestinal

complaints while in T.B. isolation (Docket No. 118, Gregoire Decl. ¶ 19; Docket No. 122, Pl.

Aff. Ex. A, Bates Nos. 0171-74; Docket No. 124, Order at 30).  Therefore, plaintiff **has not

shown that he is entitled to reconsideration** on this point.

Plaintiff argues that the Court erred in considering his punitive damages claim (Docket

No. 133, Pl. Memo at 18) and his arguments against granting defendants qualified immunity (id.

at 19).  Given the disposition above, the Court need not revisit punitive damages or qualified

immunity issues.

CONCLUSION

For the reasons stated above, plaintiff's motion for reconsideration and vacatur of

defendants' summary judgment dismissing this case (Docket No. 130) is **denied**.

So Ordered.

/s/ Hugh B. Scott

Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
        August 12, 2008

12